NEWELL & a. v. HANCOCK & a.

A town which has received a grant of land for specified purposes, " or for any other necessary public use, at the discretion of the town," may change the public use to which any part of the land may be devoted.

A bequest of money to a town "for the reclamation and embellishment of the common," the common being at the time the will was made occupied by a school-house to the testator's knowledge, will not be construed as made upon condition that all structures should be removed from the common, and that no building should thereafter be erected upon it.

If such a bequest authorizes the town to buy additional land to become a part of the common, such addition may be devoted to the same necessary public uses as the original common.

An article in the warrant for a school-meeting, "To see if the district will vote to build a new school-house at or near the village," may be definite enough in its specification of the location to authorize proceedings before the school board, if the district at such meeting do not agree upon a location.

Gen. Laws, c. 88, s. 7, providing that notice of a commissioners' hearing should be given by posting a copy of the petition and order of notice thereon on each school-house in the district, is inapplicable to the meeting of a town school-district, established under Laws 1885, c. 43.

Only a school-district in its corporate capacity can take the objection of want of legal notice of a commissioners' hearing, under Gen. Laws, c. 88, s. 7.

BILL IN EQUITY, by legal voters in Hancock against the town of Hancock, the town school-district, the school board, and the building committee of a school-house. Facts agreed. In 1785 James Hosley, "in consideration of the town of Hancock being pleased to agree upon a plot to set a meeting-house on upon my land, and for divers other good causes and considerations," granted to the town a tract of land, containing some seven acres, "for a convenient common about said meeting-house for stabling of horses on the Sabbath, to build houses on for the people to assemble in upon Sabbath noons, for burying-yard and training-field, for roads, &c., or for any other necessary public use, at the discretion of the town, and for no other purposes." This gift was formally accepted by the town, and in the exercise of its discretion it has at different times voted to allow the common to be used for the additional public purposes of a public pound (1809), a school-house (1810), a hearse-house (1810), an academy building (1836), and an armory and public hall (1875), which is now used as a grange hall. In 1888 one Whitcomb, a native of the town, and familiar with the common and the way in which it then was and had been used and occupied, gave to the town, among other

bequests in his will, the sum of ten thousand dollars (which was duly accepted), "one half thereof, or such part of the said one half as may be considered necessary, for the reclamation and embellishment of the common . . and the rest of said ten thousand dollars as a fund, of which the income shall be used for the increase and maintenance of said reclamation and embellishment." At this time the common was encumbered by the school-house, which had become ruinous, unsightly, and unfit for use, and by the old academy building, claimed by one Turner, which had been occupied for many years by a poor class of tenants as a dwelling-house, and by a workshop and stable in its rear. All these buildings were in a poor and tumble-down condition, and disagreeable and offensive to the people of the town. In 1889 the town caused the school-house to be taken down and removed from the common; and at a legal meeting held on April 12, 1890, the selectmen were authorized and instructed to buy the old academy, or "Turner building, so called, and the land south of it, owned by Wm. F. Symonds—the same to be paid for from the Whitcomb legacy . . . " and "to sell the buildings at public auction . . . within thirty days from the time of taking the deed, the same to be removed from the common within thirty days from the date of sale."

In pursuance of this vote, the selectmen bought the Turner building, with the adjacent old buildings and four acres of the Symonds land, for $1,500, which was paid from the Whitcomb legacy. All the buildings were sold by auction in accordance with the vote, and have been removed from the common, with the exception of the Turner building, which was purchased by the school-district with the intention to remodel it and use it for a school-house upon a different location on the common. Subsequently, and upon petition, the county commissioners located the school-house lot upon the site of the old school-house of 1810,— more than four fifths of the lot being a part of the old common, and less than one fifth a part of the addition paid for from the Whitcomb legacy; and the town has by formal vote approved the location and granted the district the use of the land.

The plaintiffs, who are citizens and legal voters in Hancock, object to the location, and allege that the building of a school-house on the common would be a gross violation on the part of the town of its obligation to Whitcomb and his representatives after accepting his legacy, and that it would injure the beauty of the common, etc. These allegations are denied by the defendants. The plaintiffs also allege, and the defendants deny, that the proceedings before the commissioners were insufficient and illegal, and without legal notice of the hearing. And one of the plaintiffs (Tuttle), who is an executor and nephew of Whitcomb, makes the additional claim, in both his official and private capacity, that if the Whitcomb legacy is allowed to be used as it has

been by the defendants, it will cause a forfeiture of the entire legacy to the estate. The prayer of the bill is for a decree setting aside the proceedings of the county commissioners, and for an injunction restraining the defendants from erecting a school-house on said lot or on any other part of the common. Some additional facts are sufficiently stated in the opinion.

*David Cross, John S. H. Frink*, and *George B. French*, for the plaintiffs.

*Robert M. Wallace, Frank G. Clarke*, and *William L. Foster*, for the defendants.

BLODGETT, J. In granting to the school-district the perpetual use of the school lot, the town neither exceeded its power under the Hosley grant, nor violated any obligation to Whitcomb arising from the acceptance of his legacy. By the terms of that grant the town was to appropriate the land for certain specified purposes, and "for any other necessary public use" at its discretion. The power to exercise its discretion is concurrent with the enjoyment and continuance of the grant. There is no condition attached to the gift restraining the town from changing the public use to which any part of the land may be devoted; and an appropriation of a part of it to a particular use did not exhaust the power of the town to apply the same land to a different necessary public use when no longer needed for the original purpose. The discretion to determine the character of the use implies the power to change it; and this power being vested in the town, the general doctrine invoked by the plaintiffs, that land already applied to a public use cannot be wrested from that use and devoted to an inconsistent use without special legislative authority, has no application. If, however, it did apply, its application would not aid the plaintiffs, for if the determination of the use to which the grant, or any part of it, should be devoted exhausted the power of the town so that it could not afterwards change the use, it necessarily follows that the dedication of a part of the land to the use of a school-house in 1810 was final and perpetual.

There is, then, no solid ground on which the plaintiffs' contention can stand, so far as it relates to that portion of the school lot embraced within the Hosley grant. And as regards the remaining portion of the lot which was purchased by the town with the funds of the Whitcomb trust, it is not perceived how the contention practically stands any better; for if the common, as established by the Hosley grant, could properly be enlarged under the language of the Whitcomb bequest by making additions to it, as by the Symonds purchase, such additions would become a part of the original common, and subject to the same public uses to which

it is subject.    And if this is so, it follows that the partial location of the school lot on the Symonds addition is a proper location under Hosley's grant for necessary public uses.    But if the purchase of that addition was, as claimed by the plaintiffs, a misappropriation of the Whitcomb legacy and a breach of the trust under which it was accepted and held (as to which no opinion can properly be expressed in this proceeding for want of necessary parties), then the town must restore to the trust fund the amount used in making the addition; but in that event the town will still continue to hold the land devested of any rights of the Whitcomb trust, and it having by its vote given to the district the perpetual use of the entire school lot as located by the commissioners, the location upon the Symonds part of it stands no differently, for the purposes of this case, from that upon the Hosley part.

The acceptance of the Whitcomb bequest by the town did not change the meaning of his will, nor limit or impair the town's rights under the Hosley grant.    When Whitcomb made his will, and up to the time of his death, a portion of the common selected by the commissioners in 1890 as a location for the proposed school-house lot was occupied by the old school-house.    He was familiar with the common, and with the way in which it was and had been used and occupied, and undoubtedly he was also familiar with the terms of the Hosley grant.    The Whitcomb legacy was "for the reclamation and embellishment of the common, so called."    Did the testator mean by the word "common" a lawn or park not occupied by buildings, or did he mean the common to be used as it had been legally used?    The presumption is that he used the word "common" and the words "reclamation" and "embellishment" in senses consistent with the legal public uses which the town can make of the common under the Hosley grant, and that he did not intend or attempt to impair or restrict the legal uses of the land under the grant.    If it had been his purpose to make it a condition of the bequest that all structures should be removed from the common and that no buildings should thereafter be erected upon it, he would have so provided in his will.    The absence of such a provision is of itself sufficient evidence that the testator did not intend to restrict the town in the legal use of the Hosley grant.

The plaintiffs also contend that there had been no action on the part of the district in reference to the school-house and its location which gave the board of education jurisdiction in the premises, because the warrant for the annual meeting, holden March 5, 1889, did not specify the location with sufficient definiteness, and because there was no subsequent neglect by the district, or by its committee, to make a location which gave to the petitioners the right of petition to the school board or to the commissioners.

The objection of indefiniteness is overruled.    The warrant was

(Art. 6) "To see if the district will vote to build a new school-house at or near the village, with suitable outbuildings;" and (Art. 7) "To see what sum or sums of money the district will raise by taxation, or otherwise, for building, purchasing, renting, repairing, or removing such school-houses and outbuildings as the wants of the district require, procuring land, and providing suitable furniture and apparatus and needful conveniences therefor." These articles are sufficiently definite in respect of location.

At this meeting "it was voted that the district build or purchase a building suitable for a school-house at the village, and that a committee of five persons be appointed to take the matter into consideration and to report at that meeting," and a sum of money was voted to be raised to carry out the vote. A committee was then appointed, but it failed to report at the meeting. Subsequently another meeting of the district was called, with an article in the warrant to take the sense of the qualified voters as to their preference of a location for the school-house at the village, but the article was dismissed without action thereon. Thereupon twenty-three citizens petitioned the board of education, setting forth the vote at the annual meeting and the failure of the committee to comply therewith, to locate the school buildings, and acquire the land, by purchase or otherwise, as the law prescribes. The objection that these petitioners had no grievance which entitled them to a hearing before the board of education is likewise overruled. "If at a meeting duly holden for the purpose, the district do not agree upon a location for a school-house . . the school-committee, upon the petition of three or more voters, shall determine the location." G. L., c. 88, s. 5.

The location fixed by the school board failing to be satisfactory, it was the right of eight or more voters of the district who felt themselves aggrieved by the location (Laws 1887, c. 105, s. 7) to appeal to the county commissioners, who in such cases are invested with final authority. G. L., c. 88, s. 6. Such an appeal having been taken, a hearing was appointed and had by the commissioners, who made the location in question, which the plaintiffs finally ask to have set aside for want of legal notice of the hearing, which was given by posting a copy of the petition and order of notice thereon at two of the most public places in the district, and by delivering a copy to the clerk and each of the school board.

This objection, like the others, must be overruled. The ground on which it rests is, that s. 7, c. 88, Gen. Laws, provides that in the case of school-house petitions to them, the county commissioners shall give notice of the time and place of hearing by causing a copy of the petition and order of notice thereon to be posted on the outside of the outer door of each school-house in the district, if there be any in the district, and if not, in one or more public places in the district, at least fourteen days before the

time so appointed; and by causing a like copy to be given to or left at the usual place of abode of the clerk and prudential committee of the district a like time before the time appointed for the hearing. And so the claim of the plaintiffs is, that the town of Hancock at the time of the hearing constituting but one school-district, notice of the hearing should have been posted on the outside door of every school-house in the town. But the district system, to which *c.* 88 applies, was superseded by the radically different town system, which went into effect March 1, 1886; and it is not open to reasonable doubt that sufficient and ample notice of the hearing was given, conformably to the new order of things. If, however, it were otherwise, it is for the district alone, and in its corporate capacity, to take the objection.

The injunction prayed for is denied.

*Bill dismissed.*

SMITH, J., did not sit; the others concurred.