**Staunton.**

County of Alleghany v. Parrish.

October 1, 1896.

1. County Property—*For what Purpose to be Used—Powers of County Courts Over—Lease for a Law-Office.*—County courts had no authority, either under the Code of 1819 (1 Rev. Code, ch. 71, sec. 16), or the Code of 1849 (ch. 50, sec. 1), to authorize or permit the use of lands acquired for a court-house, jail, and other public buildings, for any other purpose than those mentioned in the Codes. The power of acquisition was for a special purpose, and the use was confined to the purpose for which authority to acquire was given, and subject to the restrictions imposed; and it is immaterial whether the land was acquired by gift, or purchase, if held under the general law. The uses to which the court was required to put the land exhausted the purposes for which it could be used. It had no authority to authorize the erection of a law office on the land upon payment of a ground rent.

2. County Property—*Uses of—Authority of Board of Supervisors Over.*— The Act of Assembly placing the corporate property of counties under the control and management of the board of supervisors of the counties (Acts 1878-'9, ch. 58, sec. 7) did not change the uses to which the public property might be put, but is to be construed in connection with the prior law designating such uses, and the designation of these uses is not discretionary, but mandatory.

3. County and Municipal Officers—*Powers to Contract—Ultra Vires Contracts—Estoppel.*—The agents, officers, or governing body of a municipal corporation or a county, cannot bind the corporation or county by a contract which is beyond the scope of its powers. Such contracts are *ultra vires* and void, and, in actions thereon, the want of power to execute is a complete defence, and the county or corporation is not estopped from setting it up.

4. Adversary Possession—*Vendor and Vendee.*—A defence based on adversary possession for a sufficient length of time to bar the plaintiff's claim cannot be made where the plaintiff and the defendant occupy the relation of vendor and vendee, with the legal title outstanding in the vendor, and especially where the suit is based upon that relation.

Appeal from a decree of the Circuit Court of Alleghany county, pronounced August 29, 1895, in a suit in chancery, wherein the appellee was the complainant, and the appellant was the defendant.

*Reversed.*

The opinion states the case.

*A. C. Braxton* and *George A. Rivercomb,* for the appellant.

*Elder & Elder,* for the appellee.

BUCHANAN, J., delivered the opinion of the court.

In the year 1853 the County Court of Alleghany county gave Andrew Damron and William Skeen leave to build law offices on the court-house square of the county, upon the condition that the buildings should only be used as law offices, and that when they ceased to be so used all the rights and privileges granted should cease.

Under this agreement they erected law-offices upon the court-house square. In the year 1858 the County Court entered an order directing the clerk of the court to convey to them " the right to build, and enjoy the use of the land on which said buildings were erected, and to sell and convey the same so long as the offices erected by them are used as law offices, by yielding and paying annually (each) as a ground rent the sum of one dollar."

The deeds provided for in this order were never executed.

In the year 1874 Mr. Damron sold and conveyed to the appellee his law office with all the rights and privileges which he had acquired by virtue of the above mentioned order of the County Court.

In the year 1885 the board of supervisors of the county gave the appellee leave to build an addition to the law office

which he had purchased from Mr. Damron, upon the same terms, and under the same restrictions, as the office to which the addition was to be made was held. The addition provided for, was erected, and the appellee continued to occupy and use both as law offices until the year 1893, when the board of supervisors demanded possession of the land upon which they were erected. The appellee refused to surrender the possession of the land, and, in March, 1894, the appellant brought an action of ejectment to recover it. The appellee thereupon instituted his suit in chancery to enjoin the prosecution of the action of ejectment, and to compel the county to convey to him the land upon which his offices were located so as to quiet and confirm his title, and authorize him and his assigns to hold, occupy, and use the land on which his offices were built so long as he or his assigns shall use said offices for a law office, reserving to the county the ground rent provided for.

The appellant demurred to and answered the bill. The defence set up was that the orders of the County Court and board of supervisors relied on as contracts by the appellee were *ultra vires* and void, and that the appellee acquired no rights under them which could not be revoked by the county authorities.

Upon the hearing of the cause the Circuit Court was of opinion that the appellee was entitled to a specific execution of the contracts sued on, and so decreed. From that decree this appeal was taken.

There is no claim that the County Court or board of supervisors had any other authority to dispose of or make contracts with reference to the court-house square or lot than such as was given by the general law when the respective orders were made.

By the Code of 1819, which was in force when the county of Alleghany was formed, and when it acquired the court-house lot or square of three-fourths of an acre, it was made

the duty of every County Court to cause to be erected and kept in repair (or where the same had been erected to maintain and keep in repair), a court-house, county jail, whipping post, pillory and stocks; and, where land had not been already provided and appropriated for that purpose, the court was authorized to purchase two acres of land upon which to erect said public buildings for the use of their county, "*and for no other use whatsoever.*" 1 Rev. Code, ch. 71, clause or sec. 16, p. 250.

By deed executed in the year 1831, the court-house lot, which had theretofore been acquired from James Merry as a seat for the public buildings of the county of Alleghany, and upon which the court-house and the jail of the county had been erected, was conveyed to the acting justices of the peace of Alleghany county to be held by them and their successors in office.

It was contended in argument by appellee that the court-house lot had been acquired by *gift*, and not by *purchase*, and, inasmuch as the donor had not seen proper to impose any restrictions on his gift, the management and control of it was left to the discretion of the justices, and not governed by that restriction in the Code of 1819, which provided that land acquired upon which to erect the court-house and other buildings named should be held for " the use of the county or corporation, and for no other use whatsoever." It may be true that the land was acquired by gift, and not by purchase, in the popular meaning of that word, but whether that be true or not is immaterial in this case. The land was acquired and conveyed for "a seat for the public buildings of the county of Alleghany." When it was acquired the County Court had no general power to acquire lands, but a special power for special purposes only; and, having acquired it for a special purpose, it must of necessity be confined in its use of the land to the purposes for which authority to acquire was given, and subject to the restrictions imposed. 2 Dillon on

Mun. Corp., section 563 (4th Ed.); Cabell, Judge, in *Bolling* v. *Mayor, &c.*, 8. Leigh at page 233.

The Code of 1849 which was in force when the orders of the County Court upon which the appellee relies were made, required that "there shall be provided by the court of every county, and by the council of each town wherein there is a corporation court, a court-house, clerk's office and jail, the cost whereof and of the land on which they may be, and of keeping the same in good order, shall be chargeable to the county or corporation, and may be levied for by such court or council. The fee simple of the land shall be in the county or corporation, and the court thereof may purchase so much land as, with what it may before have had, will make two acres, whereof what may be necessary shall be occupied with the court-house, clerk's office and jail, *and the residue planted with trees and kept as a place for the people of the county to meet and confer together.*" Code of 1849, ch. 50, section 1, p. 255.

By this provision of the Code the County Courts were not only not expressly, nor impliedly authorized to make contracts by which other buildings than those specially named could be erected upon the court-house lot or square, but it expressly provided the use to which the residue of the lot, not occupied by the court-house, clerk's office, and jail, should be put. It required that so much thereof as might be necessary " shall be occupied with the court-house, clerk's office, and jail, and the residue planted with trees and kept as a place for the people of the county to meet and confer together."

The lot in so far as it was not occupied by the court-house, clerk's office, and jail, was required to be planted with trees, and kept as a place for the people to meet and confer. Not a portion of the residue was to be so used, but the whole of it. The uses to which the court was required to put the lot exhausted all the purposes for which it could be lawfully

used. And in so far as the court authorized or permitted it to be used for other purposes, to that extent did it fail to perform the duty expressly imposed upon it by the statute.

By act of April, 1879 (which was in force in 1885, when the order of the board of supervisors was made giving the appellee the right to make an addition to his office), it was provided that the board of supervisors of each county should have power " To sell or exchange the corporate property of the county; to purchase any such real estate as may be necessary for the erection of all necessary county buildings, and to provide a suitable farm as a place of general reception for the poor of the county, and to make such orders concerning such corporate property as now exists or as hereafter may be acquired as they may deem expedient; provided that no sale of such corporate property shall be made except by public auction," after notice given, and subject to the approval and ratification of the County Court. Acts 1878–'9, ch. 58, sec. 7, p. 300.

There was nothing in the statute quoted placing the corporate property of the county under the control and management of the board of supervisors which, in our opinion, changed the uses which might be made of the court-house square. The provision quoted by the appellee to show that they had the power to make the order relied upon by him, is as follows: " To make such orders as they may deem expedient concerning such corporate property as now exists or as may hereafter be acquired." This provision of the statute must be construed with that contained in section 1, ch. 50 of the Code of 1849, quoted above, and in which no change has been made since its enactment except that the power given to and the duties imposed upon the County Court by it are now given to and imposed upon the board of supervisors. Sec. 925 Code of 1887. By it the board of supervisors were, in 1885, and are now, required, as was the County Court, to plant with trees the residue of the court-house lot not occu-

pied with the court-house, clerk's office, and jail, and to keep it as a place for the people of the county to meet and confer together. The duties imposed by this provision upon the board of supervisors are not discretionary, but manda- tory. They cannot make such use of the court-house square " as they may deem expedient " when the Legislature has determined for what purposes, and for what purposes only, it shall be used; for, as we have seen above, using it for any other purpose than those provided for by the Legislature, withdraws it to that extent from the uses to which the Legis- lature has expressly dedicated it.

The county is not, as is claimed, estopped from denying the authority of its agents to make the contracts sued on. The orders made by the County Court and the board of supervisors, as we have seen, were not only beyond the scope of their powers, but in violation of their duties.

It is settled beyond controversy that the agents, officers, or governing body of a municipal corporation, or of a county cannot bind the corporation by a contract which is beyond the scope of its powers. The inhabitants of a municipal corporation are its corporators, and the officers are but the public agents of the corporation. Their duties and powers are prescribed by statute or by charter, which all persons not only may know, but are bound to know. It results from this doctrine that contracts not authorized by the char- ter, or by statute, and which are, therefore, not within the scope of the powers of the corporation, are void, and in actions thereon the corporation may successfully set up as a defence its want of power.

The appellee also relies upon the statute of limitations to protect him in his possession of the property in controversy.

That was a legal defence, and the proper place to make it was in the action of ejectment. But no such defence can be made in any forum, legal or equitable, where the relation of vendor and vendee exists, and especially where, as in

this case, the suit in which it is set up is based upon that relation.

It was said by Judge Riely, who delivered the opinion of the court in *Chapman* v. *Chapman*, 91 Va. 397, 400, following *Clarke* v. *McClure*, 10 Gratt. 305: "Before adverse possession can arise between a vendor and his vendee, or between the grantee of the vendor and such vendee" (or between the grantee of such vendee and his vendor) "where the vendor has retained the title, and the statute of limitations commences to run, the vendee must have dissevered the privity of title between them by the assertion of an adverse right, and openly and continuously disclaimed the title of his vendor, and such disclaimer be clearly brought home to the knowledge of the vendor or his grantee."

We are of opinion that the appellee acquired no rights under his alleged contracts, at least none which could not be revoked at any time by the board of supervisors, and that the Circuit Court erred in decreeing that he was entitled to have them specifically executed.

The decree appealed from must be reversed, the injunction dissolved, and the bill dismissed.

*Reversed.*