## Wytheville.

## CITY OF WILLIAMSBURG V. JOHN MILTON LYELL.

### June 15, 1922.

1. MUNICIPAL CORPORATIONS—*Acquisition and Alienation of Property—General Rule.*—Property owned by a city for governmental purposes and appropriated for the public use is impressed with a trust and cannot be disposed of, except by valid legislative authority. As a general rule, however, a municipal corporation, unless restricted by its charter, or by statute, has the power not only to acquire property, real and personal, but, where not appropriated for the public use, may alienate the same just as other corporations ,or individuals might do.

2. MUNICIPAL CORPORATIONS—*Alienation of Property—Where Uses Cease.*—While generally speaking, property devoted to a public use cannot be sold or leased without special authority, still when such use of the property has ceased and it is no longer needed, it may then be sold, or leased, as the public welfare may demand.

3. MUNICIPAL CORPORATIONS—*Alienation of Property—Dedication of Property to Public Use—Meaning of Dedication.*—There is a distinction between property purchased for a public use and not yet dedicated and property purchased for that purpose which has been actually dedicated. Dedication in this connection has a definite meaning. It means: Devoted to the public use; set apart for the public use; given over to public use; appropriated for the public use.

4. MUNICIPAL CORPORATIONS—*Alienation of Property—Case at Bar.*—In the instant case, a suit for specific performance against a city to enforce the city's agreement to renew a lease, the city contended that the granting of the lease in question was an *ultra vires* act. The city by its charter and a subsequent act of Assembly had power to acquire and alienate real estate, and from the subsequent act it was clear that the property in question was not dedicated to public use. The records of the city prior to 1865 had been destroyed by fire and the two old maps in evidence were insufficient of themselves to prove a dedication to public use. At most they tended to show that a market had been established at some point on the square in which the lot in question was situated, but had long since been discontinued. Other lots in the same square were held by indi-

viduals claiming titles in fee, and the city itself had leased to sundry parties other lots located in the square.

*Held:* That the lot in question was held by the city in its private capacity and had never been dedicated to public uses, and the city had full power and authority to lease or sell the same.

Appeal from a decree of the Circuit Court of the city of Williamsburg and county of James City. Decree for complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Ashton Dovell,* for the appellant.

*Frank Armistead,* for the appellee.

WEST, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of the city of Williamsburg and county of James City, requiring the city of Williamsburg to specifically perform its covenant to renew a certain lease for a lot of land on Duke of Gloucester street in the city of Williamsburg.

The original lease was entered into on September 24, 1894, between the mayor and common council of the city of Williamsburg and J. B. C. Spencer and others, and by mesne conveyances became the property of John Milton Lyell.

The lease demised unto the grantees, their executors, administrators and assigns all that certain unimproved lot on the south side of Duke of Gloucester street, adjoining the Methodist church, for the period of twenty-five years next ensuing, yielding therefor the yearly sum of fifteen dollars, payable on the 24th day of September of each year, and containing the following clause: "The term of lease hereby granted being renewable at the end of the first and each succeeding term of twenty-five years at the

pleasure of the said J. B. C. Spencer, R. L. Spencer and H. G. Spencer, their personal representatives and assigns."

The following are among the material facts shown in the evidence:

All the rents due under this lease have been paid. The records in the clerk's office of the Circuit Court of the city of Williamsburg and county of James City were destroyed by fire in 1865, and there is no record evidence of titles beyond that date. A map of the city of Williamsburg, drawn by Benjamin Bucktrout in August, 1800, and sketched by Robert Lively in 1867, is hanging on the wall in the clerk's office of the city of Williamsburg, which shows that there are two blocks of land, each about the size of a city block, one on the east and the other on the west side of England street, and lying between Duke of Gloucester street and Frances street; and two blocks of land the same size on the north side of Duke of Gloucester street, said four blocks, or squares, being located near the center of the city. The lot in litigation is a part of the southwest square, as shown on said map, and has upon it a two-story frame building, the first floor of which is a storeroom, and the second floor of which is divided into rooms used for residence and office purposes. England street, as now located between Frances and Duke of Gloucester streets, is about 100 feet west of its location as shown on said map. As England street is located on said map, it would place the property now known as the brick hotel on the west side of England street and place the old powder horn magazine either in England street or west thereof. The western square, on the south side of Duke of Gloucester street, is designated on said map as "Market Square and Magazine," and the eastern square on said map, on the south side of Duke of Gloucester street, is marked "Market Square." By a map in the library of the college of William and Mary labeled, "Map of Williamsburg, executed about 1780, not known by whom," the two squares,

on the south side of Duke of Gloucester street, above mentioned, are identically as on the map in the clerk's office, except that the western square is marked "Market Square," and a picture of the powder magazine is sketched thereon, showing it to be right on the side of England street and with the word "Magazine" written to the side of the picture. The western portion of the southwestern square, as shown on said map would include property now held by the First National Bank, what is known as the "Debtors' Prison," which is owned by Annie Galt, and property that is owned by Elizabeth Henley and T. H. and C. H. Hall, all of whom claim their property in fee, though the records back to 1865 do not show the property came from the city of Williamsburg. The southwest square also has on it the Peninsular Bank, the Methodist church, and the lot leased by W. C. Johnson, now used by the city as a council chamber, the city and county jail, one-half interest in the jail lot having been conveyed to the county, the fire station and some vacant lots now held by the city. The southwest square as it now is, with England street moved one hundred feet west of its position on the map, includes ground upon which a building was once erected and used as a district courthouse, town hall and city lockup. The two squares north of Duke of Gloucester street are what is known as the courthouse green, on which is located the courthouse now used by the city of Williamsburg and the county of James City. There is, on the southeastern square, the Baptist church parsonage, the stone lot, a lot leased to banks now used by Dana as a real estate office, and a lot leased to the city school board. The original charter of the city of Williamsburg, granted by King George I of England, is now in the library of William and Mary and is considered in evidence.

To assist in a clear understanding of the facts in the case, the plat of the four squares and streets referred to in the evidence is printed herewith:

Opinion.

N

Prince George Street

CHURCH

Duke

of

King   street

PALACE St.

GREENHOW

GREENHOW SPRING

MARKET SQ.

MAGAZINE

MARTIN

WILLS

MARKET SQ
Courthouse

FRANCES

E N G L A N D

STREET

MARKET

SQUARE

MARKET
SQUARE

STREET

GLOUCESTER or MAIN STREET

NICHOLSON ST.

Queen St.

LIGHTFOOT

LIGHTFOOT

LEE

LANE, 24' wide

PARADISE

LEE

PRENTIS

LANE 24' wide

Queen St.

The city of Williamsburg assigns as error the action of the court in overruling its demurrer and entering the decree complained of, its contention being that the granting of the lease in question is an *ultra vires* act on the part of the then agents of the city.

What powers has the city of Williamsburg as to the lot of land in question?

[1] Property owned by a city for governmental purposes and appropriated for the public use is impressed with a trust, and cannot be disposed of except by valid legislative authority. As a general rule, however, a municipal corporation, unless restricted by its charter, or by statute, has the power not only to acquire property, real and personal, but, where not appropriated for the public use, may alienate the same just as other corporations, or individuals might do.

McQuillin on Mun. Corp., section 1140, states the rule thus: "All property held by the city in fee simple, without limitation or restriction as to its alienation, may be disposed of by the city at any time before it is dedicated to a public use. In other words, the city has the right to sell or dispose of property, real or personal, to which it has the absolute title and which is not affected by a public trust, in substantially the same manner as an individual unless restrained by statute or charter; and this power is an incidental power inherent in all corporations, public or private. Thus, land held by the city in full use and ownership—*e. g.,* commons acquired by confirmation under act of Congress—may be sold when no longer needed for public use. So, land bought for a public purpose, if not actually so used, cannot be said to be affected by a public trust, and hence may be sold."

In 28 Cyc., at page 622, we find this: "Property held by the corporation for strictly governmental purposes may be sold or disposed of only under express legislative authority.

But property held for general municipal purposes is subject to its discretionary power of use and disposal."

Where property is acquired or held for a special purpose, as soon as that purpose is served, and the corporation has no further use for the property, it may be converted to another use, or disposed of by the municipality. *Newell* v. *Hancock,* 67 N. H. 244, 35 Atl. 253.

The city of Fort Wayne, Ind., purchased a tract of land for a park, but before it was actually dedicated to the public, conveyed part of it to a railroad company for a yard and shops. The court, in passing upon the validity of the deed, upheld it on the ground that the property, although purchased for a public common, had not yet been dedicated. *Fort Wayne* v. *Lake Shore Mich. Southern R. Co.,* 132 Ind. 558, 32 N. E. 215.

In the case of *Head-Lipscomb-McCormick Co.* v. *City of Bristol,* 127 Va. 676, 105 S. E. 500, Prentis, J., speaking for the majority of the court, said:

[2, 3] "While, generally speaking, property devoted to a public use cannot be sold or leased without special statutory authority, still, when such use of the property has ceased and it is no longer needed it may then be sold, or leased, as the public welfare may demand. *Ogden* v. *Bear Lake, etc., Co.,* 16 Utah 440, 52 Pac. 697, 41 L. R. A. 310. While municipal corporations have no power to dispose of property of a public nature in violation of trusts upon which it is held, there is a distinction between property purchased for a public use and not yet dedicated and property purchased for that purpose which has been actually dedicated. Dedication in this connection has a definite meaning. It means: Devoted to the public use; set apart for the public use; given over to public use; appropriated for the public use."

[4] The original charter of the city of Williamsburg gave it full power to acquire real estate. And in 1705, the General Assembly of Virginia passed an act (3 Hening's Stat-

utes, page 419), entitled "an act continuing the act directing the building of the capitol and the city of Williamsburg with additions," which appropriates 283 acres and thirty-five and one-half poles of land in James City and York counties, as shown by a certain plat therein referred to, for the building of the city which shall be forever known as the city of Williamsburg, said plat being then in the office of the General Assembly. The act provides that about sixty-three acres shall be held upon a public trust for streets and ports, designating specifically Duke of Gloucester street and the streets or roads leading from Duke of Gloucester street to two public landings, or ports, one at Queen's creek and the other at Archer's Hope creek, and a tract of land on each creek for a port. There is no mention made of public squares at any place in the city. And the act further provides for subdividing the remaining 220 acres into half-acre lots and appoints commissioners to sell the lots for building purposes and convey the titles to the purchasers. The mayor, aldermen and common council of the city are given power to purchase, receive, enjoy and retain lands, rents, tenements and hereditaments of every kind, and to grant, demise and alien the same.

Has the lot described in the lease ever been dedicated or devoted to public uses?

It is clear that under the provisions of the foregoing statute this lot was not dedicated to a public use, but rather to a private use, to be sold as the residue of the 220 acres was to be sold. The records prior to 1865 were destroyed by fire, and the two old maps referred to in the evidence are insufficient of themselves to prove a dedication to public use. At most, they tend to show that, at some later date, a market was established at some point on the southwest square, which has long since been discontinued.

This case does not, as contended by counsel for appellant, come within the rule of construction announced by

the court in *Alleghany* v. *Parrish,* 93 Va. p. 615, 25 S. E. 882, and *Franklin Co.* v. *Gills & Johnson,* 96 Va. p. 330, 31 S. E. 507, for the reason that in those cases it was admitted that the property in litigation had been dedicated to public uses.

The proof is ample that the city council has for many years treated this square, except a small portion thereof, as property not needed for the public use, and has sold a considerable portion thereof; and that it now includes property owned by one of the banks, the Methodist church, the old "Debtors' Prison," owned by Annie Galt, and property owned by Elizabeth Henley and T. H. and C. C. Hall, all claiming titles in fee. It further appears that the mayor and council have executed several leases demising to sundry parties other lots located in the same square, and were willing to renew all outstanding leases on lots heretofore leased, on the south side of Duke of Gloucester street, for shorter terms and at higher rentals.

It is manifest that the lot in question was held by the city in its private capacity and has never been dedicated to public uses, and that the city has full power and authority to lease or sell the same.

Other questions are raised in the record, but those discussed here are decisive of the case. The decree under review is plainly right and will be affirmed.

*Affirmed.*