# Richmond.

## LEROY D. WOOD v. PENDER-DOXEY GROCERY COMPANY.

September 27, 1928.

The opinion states the case.

*Henry Bowden* and *Samuel E. Forwood*, for the plaintiff in error.

*Pender, Way & Foreman*, for the defendant in error.

MCLEMORE, J., delivered the opinion of the court.

Writ of error to a judgment of the Court of Law and Chancery of the city of Norfolk.

Action by Pender-Doxey Grocery Company against Leroy D. Wood. Judgment for the plaintiff, and defendant brings error.

Leroy D. Wood, in June, 1926, and for a number of years prior thereto had owned and conducted a retail grocery business at 603-609 Botetourt street, in the city of Norfolk. On June 24, 1926, he sold said business, together with the fixtures, equipment and good will, to A. D. Doxey who promptly transferred same to defendant in error, a corporation, and the corporation conducted the said grocery business thereafter at the Leroy D. Wood store, in the conduct of which they employed R. C. Jarvis and W. G. Turner, two of the trusted and valuable clerks of Wood, who were familiar with the trade and popular with the clientele that had regularly patronized this store prior to June 24, 1926.

On September 15, 1926, Wood opened a retail grocery store in the same section of the city in which Pender-Doxey was operating, whereupon and immediately thereafter numbers of his old customers left the new company and resumed purchasing all or a major portion of their supplies from Wood. This loss to Pender-Doxey amounted to from $2,000.00 to $2,-500.00 per month in gross sales.

Jarvis and Turner, two popular salesmen of Wood, remained with Pender-Doxey Grocery Company after the sale in June until the day before Wood opened his new store, and gave their employer ten days' notice of their decision to leave.

These same clerks some considerable time before giving notice of their determination to leave, were conferring with Wood for the purpose of laying plans looking to the opening of the new store, which began business on September 14th or 15th. During all this time they were employed by defendant in error, and for more than ten days before they severed their connection with Pender-Doxey, were actively soliciting the customers of their employer to shift their trade to the

new store presently to be opened. In this they were quite successful, taking according to one of the witnesses forty or forty-five of the company's customers the first day he opened, and according to another, he (Wood) said: "He was working right on the customers; that is going right back after them."

On September 15, 1926, the two salesmen, the shipping clerk, Cole, the head butcher, and the driver of the delivery wagon, the last three without previous notice, discontinued their relations with Pender-Doxey, their employer, and took up their duties with the new store under the control of Wood, and thereafter continued to solicit business, from the old customers of Wood, the then patrons of Pender-Doxey.

All this was with the knowledge and consent of Wood—at least the jury might have so found. They might have also found from the evidence that the parties to the contract of sale valued the "good will" at from $6,000.00 to $7,000.00.

A motion for $10,000.00 damages was brought by defendant in error, alleging breach of contract, and the jury returned a verdict of $3,500.00, which was approved by the trial court.

There are four assignments of error.

1st. To the admission of a list of customers who had discontinued buying from Pender-Doxey very soon after Wood began business, which was offered by defendant in error to show that Wood had taken his customers improperly and in violation of his "good will" contract.

This evidence standing alone might have been insufficient to support a verdict, but that it was properly admitted along with the many other circumstances tending to sustain the contention of defendant in error seems clear.

The second assignment has to do with the re-

fusal of the court to grant instructions 2 and 3, which are:

"Defendant's Instruction No. 2. The court instructs the jury that if they believe from the evidence that at the time of the purchase of the business by the plaintiffs they knew that Messrs. Turner and Jarvis had certain partonage of their own which the defendant could not control, then even though the jury may believe from the evidence that the plaintiffs did lose some customers who constituted the personal clientele of Messrs. Turner and Jarvis when these gentlemen left the plaintiffs employ, such loss to the plaintiffs, if any, cannot be taken into consideration in this case because it cannot have been an element of damage in the contemplation of the parties when the plaintiffs bought the business from the defendant.

"Defendant's Instruction No. 3. The court instructs the jury that if they believe from the evidence that after Messrs. Jarvis and Turner had become the employees of the defendant they solicited the business of only such customers as had been their personal customers before they became the employees of the plaintiffs, then in this case they cannot take into consideration the loss, if any, of such customers' business to the plaintiffs."

There are several reasons why the court should not have granted either of these instructions. When it is admitted by Wood that he solicited his old customers, and that his employees, Turner and Jarvis, were actively doing the same with his knowledge, consent and approval, their acts become his acts, and he has voilated the contract of sale for the consequences of which he must answer.

True it is that a clerk in a retail store who has friends so attached to him that their trade goes to

him as a personal compliment, and quite independent of the location of the store or personality of its proprietor, may lawfully carry that patronage to his new employer. The employees' rights in this particular should be stated to the jury by a proper instruction. This we think was done by an instruction given at the instance of Wood, and as instructions 2 and 3 deal with the same general subject, they were properly refused. *Seaboard Air Line Railway Company* v. *J. E. Bowden & Co.*, 144 Va. 154, 168, 131 S. E. 245; *Levine* v. *Levine*, 144 Va. 330, 336, 132 S. E. 320; *Gunther* v. *Hughes*, 143 Va. 36, 44, 129 S. E. 239.

The third and fourth assignments are not clear, but seem to raise the question of the right of plaintiff company to recover in any event more than nominal damages. That the evidence was not specific enough on the question of damages to sustain a verdict for a substantial amount.

■ Good will is one of those intangible assets of an established business difficult to describe and impossible of valuing with mathematical precision, but, with all, of very real existence and of substantial value.

■ It is obvious that its value in a given case, would be of no great assistance in assessing it in other cases where the facts and circumstances were dissimilar. It is to be noted however, that in this case at least two witnesses fixed the value of the "good will" at $6,000.00 to $7,000.00, whereas the jury placed the damages for the violation of the "good will" covenant at $3,500.00, and this verdict received the approval of the trial judge.

It is insisted by plaintiff in error that in any event Pender-Doxey can only recover nominal damages, as there is no evidence sufficiently specific, and reasonably certain as to the quantum of damages sustained, to support a verdict for a substantial amount. 8 Ruling Case Law, 652.

■ There are authorities without number sustaining the view that damages for the breach of a contract must be the logical and natural result of the breach, and must be established with reasonable certainty. We have no disposition to depart from this elementary principle of the law, which is applicable to a great majority of the cases.

■ There are cases, however, and we think this is one, in which the question of an *intentional wrong* is involved. In such cases the degree of proof necessary is much relaxed in favor of the injured party. Where the wrongdoer creates the situation that makes proof of the exact amount of damages difficult, he must realize that in such cases "juries are allowed to act upon probable and inferential, as well as direct and positive, proof." *Chesapeake & Potomac Tel. Co.* v. *Carless*, 127 Va. 5, 102 S. E. 569, 23 A. L. R. 943.

■ The law is well stated in the case of *Manss-Owens Co.* v. *Owens & Son*, 129 Va. 183, 105 S. E. 543. It is there said:

"The violator of his contract should not be allowed to escape all liability simply because the precise amount of the damages for which he is responsible is uncertain. Nearly all commercial contracts are entered into in contemplation of future profits. As such profits are prospective, they must be uncertain and problematical, but the person injured is not to be deprived of all remedy. He has the right to prove the nature of his contract, the circumstances surrounding and following its breach, and the consequences naturally and directly traceable thereto; and it is for the jury, under proper instruction, to determine the compensation to be awarded for the breach. That compensation should be the value of the contract."

There are numerous cases supporting the doctrine

to which we have just referred. A most exhaustive discussion of the subject may be found in *Burckhardt* v. *Burckhardt*, 42 Ohio St. 474, 51 Am. Rep. 846-7. Also in *Bowling* v. *Walls*, 72 W. Va. 638, 78 S. E. 791, 792. In the West Virginia case the court said:

"Another point of error is that the damages allowed by way of recoupment against the note are excessive and not supported by evidence. From the evidence the jury were warranted in finding that the plaintiff violated the agreement that he made in connection with the sale of the store. Moreover, there is evidence amply tending to prove injury to defendant. Facts, circumstances, and data appear from which the jury were warranted in finding the amount of damages they did. In cases of this character it is not required that proof of the extent of the damages be definite and specific. There must be proof of injury, but the jury may find the amount of damages by drawing reasonable inferences from the facts, circumstances, and data furnished by the evidence. This subject of the measure of damage for the violation of good will contracts like the one involved in this case is fully discussed in 3 Sutherland on Damages, at section 658."

There is evidence supporting the verdict of the jury and the judgment of the court, and the same is affirmed.

*Judgment affirmed.*