PRESENT: All the Justices

ROY J. BUCHOLTZ, P.C.

OPINION BY
v. Record No. 970361       JUSTICE LAWRENCE L. KOONTZ, JR.
February 27, 1998

COMPUTER BASED SYSTEMS, INC.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jane Marum Roush, Judge

This appeal involves a lease dispute between the tenant of office space in a building formerly owned by a bankrupt partnership and the subsequent purchaser of that property at a foreclosure sale. Specifically, we consider whether the lease permitted the tenant to set off debts the tenant alleged were owed it by the partnership against rents owed to the new owner of the property. We further consider the effect of a provision in the lease for an extension of its term at "market rates."

We recite only the facts necessary to our resolution of this appeal. Prior to a foreclosure sale in the summer of 1995, the building in question was the property of Old Reston Limited Partnership (Old Reston). Roy J. Bucholtz and Harold O. Miller, partners in a professional corporation for the practice of law, were the general partners of Old Reston and leased space for their law practice in the building. In June 1992, Miller left the practice of law in Virginia and relocated to Florida. Bucholtz formed Roy J. Bucholtz, P.C., a new professional

corporation, and continued his law practice in the same location.

Bucholtz alleges that after Miller moved to Florida Bucholtz discovered that Miller had improperly withdrawn funds from Old Reston.  In order to "equalize" the alleged imbalance in the Old Reston account resulting from Miller's actions, Bucholtz, as general partner of Old Reston and principal of Roy J. Bucholtz, P.C., entered into a new lease between these two entities for the office space used for Bucholtz's law practice. In pertinent part, the lease included the following provision:

> Lessee and/or Roy J. Bucholtz or heirs, successors or assigns shall have the right of setoff and deduction from money owed by Lessor to Lessee and/or Roy J. Bucholtz or heirs, successors or assigns.

(Emphasis added.)[*]

The term of the lease was from April 1, 1993 to March 31, 1996 at a monthly rental rate of $2,227.50.  A further provision in the lease permitted Bucholtz to renew the lease for two consecutive three-year terms "at market rates" upon specified notice to the lessor.

---

[*]Apparently because of the emphasized language, the parties have not drawn a distinction between the rights and obligations of Roy J. Bucholtz, P.C., the actual lessee, and Roy J. Bucholtz individually.  Accordingly, hereafter we will simply refer to "Bucholtz" to mean either depending upon the context in which the reference is made.

In December 1994, Old Reston filed for bankruptcy.  During the period prior to the bankruptcy, Bucholtz paid no rent to Old Reston.  Instead, payment was made by the professional corporation to Bucholtz individually and "credited as if it was rents paid to Old Reston" so as to reduce the amount of the "debt" Bucholtz alleged was owed him by Old Reston.  Bucholtz maintained that he received these payments in his capacity as a general partner of Old Reston.

Computer Based Systems, Inc. (CBSI) purchased the building owned by Old Reston in a foreclosure sale in July 1995.  CBSI acknowledged that the purchase was subject to the existing lease with Bucholtz.  However, CBSI disputed any obligation to honor the setoff provision in the lease, and thereafter Bucholtz paid rent, "under protest," in accord with the terms of the lease into an escrow account for the benefit of CBSI.  CBSI subsequently sought to terminate the lease at the conclusion of its original three-year term.  Bucholtz responded to the notice of termination by giving notice of its intent to exercise the first three-year extension of the lease.

On April 9, 1996, Bucholtz filed a petition against CBSI, seeking a declaratory judgment that under the terms of the lease it was entitled to continue setting off rent against amounts still alleged to be owed Bucholtz individually by Old Reston. The petition further sought a declaration that the option for

the first three-year extension of the lease had been properly exercised.

CBSI filed an answer, grounds of defense, and counterclaim, asserting that it had given Bucholtz notice of its intention not to renew the lease, which voided the tenant's option to extend the lease. In the alternative, CBSI asserted that Bucholtz's current rental payments were less than "market rates" as called for in the lease, thus placing Bucholtz in default. Finally, CBSI sought judgment for possession of the office space and for rent from March 31, 1996 at "reasonable market value."

Following a two-day hearing, the chancellor orally ruled that the lease was valid, CBSI had "ratified and affirmed" it subsequent to the foreclosure sale, and Bucholtz was entitled to exercise the extension option and had properly done so. The chancellor further ruled, in a subsequent decree, that Bucholtz was not entitled to exercise the setoff provision of the lease "because there is no money owed by the former Lessor," Old Reston, to Bucholtz. Although Miller had testified that he had not made any improper withdrawals of partnership assets from Old Reston, the chancellor found this testimony "to be wholly incredible and . . . that Mr. Miller looted this partnership." Thus, the chancellor found that Bucholtz's claims were against Miller personally.

4

The chancellor's rulings were incorporated into a decree entered on November 15, 1996. The decree further ordered that the parties seek an agreement on the appropriate rental at "market rates" for the renewal term or, in the alternative, that a panel of real estate brokers be selected by the parties to determine the appropriate rate "all to be completed within ninety days."

Twenty-one days later, on December 6, 1996, the chancellor denied a motion to stay the November 15, 1996 decree, which then became final. We awarded an appeal to Bucholtz challenging those portions of the final decree which denied the right to setoff under the terms of the lease and the establishment of a panel of real estate brokers to determine market rates after the court no longer had jurisdiction over the matter. CBSI by assignment of cross-error also appeals the manner in which the chancellor sought to determine the "market rates."

Bucholtz first contends that the chancellor erred in ruling that Old Reston was not indebted to Bucholtz and, therefore, that CBSI was not bound to honor the setoff provision of the lease. We disagree.

The chancellor found, and CBSI does not dispute, that CBSI accepted the lease as part of its acquisition of the building. Indeed, CBSI asserted the right to receive rent from Bucholtz under the lease. Nonetheless, CBSI asserts that the setoff

provision is not enforceable as a matter of law, because it would permit Bucholtz, a partner of Old Reston, to favor himself over the other creditors of that partnership. We need not reach this issue because we agree with the chancellor that the evidence does not establish that Old Reston was indebted to Bucholtz.

It is fundamental and well settled that "in the absence of an agreement, express or implied, between partners in respect to their shares in the profits and losses of the business, they are to share equally." Legum Furniture Corp. v. Levine, 217 Va. 782, 787, 232 S.E.2d 782, 786 (1977). Moreover, "the interest of a partner in the partnership assets, real and personal, is his share of the profits and surplus after the payment of all partnership debts." Savings and Loan Corp. v. Bear, 155 Va. 312, 331, 154 S.E. 587, 593 (1930). Thus, Bucholtz was entitled to an equal share of the profits, if any, of Old Reston and to have any lawful debts owed him by the partnership paid to him.

In this context, Bucholtz asserts that he was attempting to "equalize" the "payments" by Old Reston to Miller through the provision for the setoff in the lease. Yet Bucholtz himself concedes, and the chancellor found, that the funds taken by Miller were not proper partnership draws of profit, but amounted to embezzlement of partnership assets to the detriment of the partnership and its creditors. Miller's acts clearly did not

6

create a debt of the partnership in favor of Bucholtz or permit Bucholtz, the remaining partner, to compound the malfeasance by "equalizing" the amount wrongly taken by another partner. Accordingly, assuming, without deciding, that the liability imposed by the setoff clause was applicable to CBSI as the "Lessor" under that clause, we hold there was ample evidence to sustain the chancellor's finding that no outstanding debt of Old Reston to Bucholtz ever existed against which the setoff could be applied.

We turn now to the remaining issues in this case. Neither party challenges the chancellor's finding that Bucholtz properly exercised the option to extend the term of the lease for three years. Accordingly, that finding is conclusive and binding on appeal. Both parties, however, challenge aspects of the chancellor's ruling concerning the lease provision that the extension would be at "market rates." Both parties contend that the chancellor erred in delegating the determination of an appropriate market rate to a panel of real estate brokers without providing for continuing control of the court over the issue. We agree.

Initially, we note that despite the broad power to do full justice usually afforded to a court sitting in equity, we are unaware of any authority, by statute or in common law, that permits the chancellor to delegate the issue before the court in

7

this case to an independent panel of real estate brokers. Although an equity court may from time to time refer matters to commissioners in chancery or special masters, we are not persuaded that such a panel of real estate brokers as that appointed here is encompassed within that authority. Moreover, here the chancellor lost jurisdiction over the case twenty-one days after entry of the November 15, 1996 decree, Rule 1:1, and, yet, the panel, which had not acted within that period, was expressly given a period of ninety days to reach a determination. Under these circumstances, the chancellor clearly erred by permitting the panel to act on the issue after the court would no longer have had jurisdiction over the matter.

We are left then to consider what action the chancellor should have taken with respect to the issue of the proper "market rates" of rental. Based upon the evidence produced, Bucholtz contends that the chancellor erred in failing to find that the original rental rate in the lease was the appropriate rental rate for the extension period. We agree.

It is axiomatic that the failure to produce evidence on an issue is held against the party having the burden of proof, not against the party that does not have the burden of proof. See Ransom v. Watson's Adm., 145 Va. 669, 679, 134 S.E. 707, 710 (1926); Brothers Construction Co. v. VEC, 26 Va. App. 286, 298, 494 S.E.2d 478, 484 (1998). Here, the sole evidence in the

record concerning "market rates" for the office space was that following the extension Bucholtz continued to pay, and CBSI accepted into the escrow account, the same rent Bucholtz had paid under the original term of the lease. CBSI had the burden of producing evidence that this was not the "market rates" contemplated by the extension provision of the lease for the space. Under these circumstances, the chancellor erred in not finding that the original lease rate was an appropriate market rate.

For these reasons, we will affirm that portion of the final decree which found that Bucholtz was not entitled to apply the setoff provision of the lease against CBSI, thus entitling CBSI to the funds in the escrow account and all other rents due under the lease. We will reverse that portion of the decree which would have submitted the determination of market rates of rental for the extension period to a panel of real estate brokers, and enter final judgment for Bucholtz declaring that the original lease rate is the rental rate for the first extension period.

Affirmed in part,
reversed in part,
and final judgment.