## CIRCUIT COURT OF FAIRFAX COUNTY

Mahmood Sahraeyan

    v.

Bahman Shahkarami et al.

    v.

Mohammad Hussain

July 15, 2014

Case No. CL-2013-9758

By Judge Robert J. Smith

Prior to 2007, Bahman Shahkarami ("Defendant") and Mohammad Hussain ("Third-Party Defendant") were partners, operating Renaissance Construction Services and Supplies Corporation ("Renaissance"). On or about July 2007, Mahmood Sahraeyan ("Plaintiff") and Defendant entered into an oral agreement where Plaintiff was to receive a percentage of all profits, assets, and inventory of Armada Afghan, Inc. ("Armada Afghan") and Royal Armada, L.L.C. ("Royal Armada") and an additional percentage of all profits, assets, and inventory of Ascend, Inc. ("Ascend").

There is some debate as to the exact date the partnership was created. The oral agreement allegedly occurred on or about July 2007 in Fairfax County, Virginia. See Transcript of Closing Argument at 6. Another exhibit, dated January 25, 2007, memorializes "a partnership" between these individuals. See Pl. Ex. 62, In the Name of God the Merciful. Finally, a third document, dated April 29, 2007, memorializes a joint venture between Renaissance Construction Services and Supplies Corporation and Ascend Incorporated. See Pl. Ex. 15, Joint Venture Agreement Between Ascend, Inc., and Renaissance Constr. Serv. and Supplies Corp. However,

the exact date of the agreement between these parties does not matter for the purposes of determining whether a partnership existed and for the purposes of assessing damages. It is important to note that, while one of the documents is labeled "joint venture," neither party advanced an argument that two companies listed in the agreement were in a joint venture rather than a partnership. Furthermore, the joint venture document itself does not create a limitation on the duration of the companies' relationship. Without the argument by counsel, the Court, therefore, will not address the issue of whether the agreement between the parties is a joint venture rather than a partnership. Overall, the date the partnership was created does not affect damages because all payments at issue were made after the last of these three dates, which is July 2007.

Armada Afghan is a corporation in the business of providing material to the U.S. Government for use by the U.S. Military in Afghanistan. Royal Armada is a subsidiary of Armada Afghan and was formed for the purpose of processing the Armada Afghan invoices to the U.S. Government. Ascend is also a subsidiary of Armada Afghan and is also in the business of providing material to the U.S. Government for use by the U.S. Military in the United States. The parties created the three companies in 2007 in order to do business with the U.S. Government. Ascend was specifically created to assume the operations of Renaissance. See Pl. Ex. 15, Joint Venture Agreement Between Ascend, Inc., and Renaissance Constr. Serv. and Supplies Corp.

At issue is (1) whether a partnership existed between the Plaintiff and Defendant and (2) if so, what is the correct measure of damages.

### Standard of Review

Va. Code § 50-73.88 states:

> A. Except as otherwise provided in subsection B, the association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership.

> B. An association formed under a statute other than this chapter, a predecessor statute, or a comparable statute of another jurisdiction is not a partnership under this chapter.

> C. In determining whether a partnership is formed, the following rules apply:

> 1. Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not by itself establish a partnership, even if the co-owners share profits made by the use of the property.

2. The sharing of gross returns does not by itself establish a partnership, even if the persons sharing them have a joint or common right or interest in property from which the returns are derived.

3. A person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received in payment:

a. Of a debt by installments or otherwise;

b. For services as an independent contractor or of wages or other compensation to an employee;

c. Of rent;

d. Of an annuity or other retirement benefit to a beneficiary, representative, or designee of a deceased or retired partner;

e. Of interest or other charge on a loan, even if the amount of payment varies with the profits of the business, including a direct or indirect present or future ownership of the collateral, or rights to income, proceeds, or increase in value derived from the collateral; or

f. For the sale of the goodwill of a business or other property by installments or otherwise.

*Analysis*

A. *Partnership*

A partnership exists when there is an agreement, either written or oral, between two or more persons to carry on a business for profit. See Va. Code Ann. § 50-73.88(A). In order to qualify as a partnership, the partners must engage in multiple transactions and not just one single transaction. See *Kiszely v. Yi*, 70 Va. Cir. 364, 368-69 (2006). "[I]n every partnership, there is a community of interest, but every community of interest does not create a partnership. There must be a joint ownership of the partnership funds or a right of control over them and also an agreement to share the profits or losses arising therefrom." *Shield v. E. S. Adkins & Co.*, 117 Va. 616, 625, 85 S.E. 492 (1915). The plaintiff bears the burden of proving the existence of a partnership. See *Adkins v. Hash*, 190 Va. 86, 91, 56 S.E.2d 60 (1949).

Once the burden is met, the Plaintiffs are "entitled to the presumption that the partnership continued to exist until the contrary is proven." *Id.*

In this case, having had the opportunity to review the evidence and observe the demeanor of the witnesses on the stand, I find that the Plaintiff and Defendant made an oral agreement on or about July 2007 to carry on a business for profit; in other words, I find that the parties formed a partnership. In order to fulfill the agreement, the parties created Armada Afghan, Royal Armada, and Ascend. The evidence clearly establishes that the parties carried on these businesses for profit. Much of the evidence introduced in this trial would demonstrate an agreement for profit between the two parties. See, e.g., Pl. Ex. 75, 98-99, 101, 104, 106-07, 110, 112-13, 116, 119-20, 122-23, 126-130, 132-33, 136-37, 140-41, 143-44, 149-50, 153-54, 173-74, 177-78, 181, 184-85, 187, 190, 194, 196, 198-99, 202, 205-06, 208, 210-11, 213, 215, 217, 219-20, 223-24, 227, 229-30, 233, 236, 241-42, 245, 248, 255-56, 260, 262, 264, 266, 268-69, 316, 321-22, 326-27, 332, 334-77, 379-80, 382-87, 389-90, 392-93, 395-96, 398-99. Not only does the evidence show that the parties carried on a business for profit, but it shows that the Plaintiff was paid a portion of the companies' profits. See Pl. Ex. 70 (showing transfers from Renaissance and Armada Afghan into Plaintiff's personal bank account). "Under § 50-7 of the Virginia Code, the sharing of profits is prima facie evidence of the existence of a partnership." *Woodson v. Gilmer*, 205 Va. 487, 493, 137 S.E.2d 891 (1964). Thus, I find that the Plaintiff and the Defendant created a general partnership.

The Defendant argues that the partnership did not adhere to certain formalities, such as filing tax returns. Similar to a joint venture, a partnership does not require adherence to formalities that are required of corporations and other similar business structures. See *Legum Furniture Corp. v. Levine*, 217 Va. 782, 786, 232 S.E.2d 782 (1977) (stating that, in joint ventures, "[l]ittle formality is required"). In fact, one of the benefits of forming a general partnership is that it is a pass-through entity, such that the partnership itself does not pay taxes but rather its individual members pay income taxes on profits. 26 U.S.C. § 701; *Little v. Cooke*, 274 Va. 697, 710, 652 S.E.2d 129 (2007) ("The Partnership's investors, not the Partnership, incurred whatever income tax liability resulted from the sale of Fox Rest."). A partnership may, but is not required, to file a partnership statement. Va. Code § 50-73.93. Thus, the partnership's failure to adhere to the formalities listed above does not prove that there was no partnership.

The Defendant also argues that there was no meeting of the minds to form an agreement between these parties. However, the Court does not agree with this assessment. This is not a case where there is "scant evidence" of a partnership. See e.g. *Snead v. Burke*, 9 Va. Cir. 266 (1987) (stating that both parties must exert equivalent effort for a meeting of the minds to occur). To the contrary, the evidence is overwhelming that this agreement occurred; the parties created three different companies to make

their partnership agreement a reality and successfully ran these businesses for profit for a few years. I find that there was a meeting of the minds sufficient to form an agreement.

Finally, the Defendant argues that the agreement to work together was brought to fruition in Afghanistan, thus, it is inappropriate to litigate this matter here. Under choice of law principles, however, this argument fails. If this case involved a written partnership agreement that stated a chosen forum for litigation and if that chosen forum was reasonably related to the purpose of the agreement, the Court would be obligated to follow the parties' agreement. See *Hooper v. Musolino*, 234 Va. 558, 364 S.E.2d 207 (1988) (applying North Carolina law in a Virginia court because the parties' agreement specified North Carolina as their choice of law and it was reasonably related to the purpose of the agreement). However, the present matter involves an oral partnership agreement where choice of law terms do not exist. Beyond the oral agreement itself, the two written documents that could evidence the formation of a partnership do not contain choice of law provisions. See Pl. Ex. 62, In the Name of God the Merciful, dated January 25, 2007, see Pl. Ex. 15, Joint Venture Agreement Between Ascend, Inc., and Renaissance Constr. Serv. and Supplies Corp. I can neither expressly nor impliedly determine what choice of law the parties intended, therefore, I must apply Virginia choice of law principles. In Virginia, "questions of substantive law are governed by the law of the place of the transaction or the place where the right is acquired (*lex loci*), while questions of procedure and remedy are governed by the law of the place where the action is brought (*lex fori*)." *Frye v. Commonwealth*, 231 Va. 370, 376, 345 S.E.2d 267 (1986). In this case, both questions produce the same result. The partnership agreement took place in Virginia; therefore, I must apply Virginia law. Additionally, the action was brought in Virginia; therefore, the Court must apply Virginia law. Thus, I find that there was an agreement sufficient to create a partnership governed by the laws of Virginia.

## B. *Damages*

Since a partnership existed between the Plaintiff and Defendant, I must next address the issue of monetary damages. The Plaintiff advances a rather simple argument on the issue of damages. The Plaintiff testified that, at the time he dissociated from the partnership, all debts had been paid, thus all accounts receivable are profit. Unfortunately, determining damages in this case is not that simple.

In order to ascertain damages, I must first determine the date of dissociation of the partnership. Absent an agreement, the dissociation of a partnership occurs upon the notice of the express will of any single partner to withdraw as a partner. See Va. Code § 50-73.109.

A. If a partner is dissociated from a partnership without resulting in a dissolution and winding up of the partnership business under § 50-73.117, the partnership shall cause the dissociated partner's interest in the partnership to be purchased for a buyout price determined pursuant to subsection B.

B. The buyout price of a dissociated partner's interest is the amount that would have been distributable to the dissociating partner under subsection B of § 50-73.123 if, on the date of dissociation, the assets of the partnership were sold at a price equal to the greater of the liquidation value or the value based on a sale of the entire business as a going concern without the dissociated partner and the partnership were wound up as of that date ....

E. If no agreement for the purchase of a dissociated partner's interest is reached within 120 days after a written demand for payment, the partnership shall pay, or cause to be paid, in cash to the dissociated partner the amount the partnership estimates to be the buyout price and accrued interest, reduced by any offsets and accrued interest under subsection C.

Va. Code Ann. § 50-73.112(A),(B), (E).

In this case, the Plaintiff dissociated from the partnership when the Plaintiff gave his notice on September 31, 2010. See Pl. Ex. 10, Email from Mahmood "Sam" Sahraeyan to Milad, October 20, 2010 (stating that the Plaintiff desired a status of the contracts "until the 1st of Oct (END OF SEPT) since [he] left the office"). Even if I determined that the partnership dissolved, rather than dissociated, as of this date, the result would be the same. See Va. Code Ann. § 50-73.123(A),(B). The Court would still need to determine the liabilities and assets of the partnership in order to settle the partnership accounts. No agreement for the dissociated partner's interest was reached within 120 days of his written demand for payment. See Pl. Ex. 3, Email from Mahmood "Sam" Sahraeyan to Bahman Shahkarami and Mohammad Hussain, April 14, 2011 (demanding the remainder of his share), Pl. Ex. 1, Email from Mahmood "Sam" Sahraeyan to Mohammad Hussain, May 17, 2011 (reiterating his demand for his share of the profits), Pl. Ex. 1, Email from Mahmood "Sam" Sahraeyan to Bahman Shahkarami, May 31, 2011 (same). Thus, the Court must look to the evidence to determine the buyout price of the dissociated partner's interest. Pursuant to Va. Code Ann. § 50-73.112(B), the buyout price is the amount that would have been distributable if the partnership were sold at a price equal to the greater of the liquidation value or the value based on a sale of the entire business as

a going concern without the dissociated partner and the partnership were wound up as of that date.

In order to wind up and settle the accounts of the partnership, the partnership must first pay all debts that the partnership owes before it distributes profits to the partners. See *Roy J. Bucholtz, P.C. v. Computer Based Sys.*, 255 Va. 349, 354, 498 S.E.2d 231 (1998) ("Moreover, 'the interest of a partner in the partnership assets, real and personal, is his share of the profits and surplus after the payment of all partnership debts'.") (citing *Savings and Loan Corp. v. Bear*, 155 Va. 312, 331, 154 S.E. 587 (1930)).

The Court does not have sufficient direct evidence to determine the partnership debts from the partnership profits. The Plaintiff must meet the preponderance of the evidence standard. *Chesapeake & O. Ry. v. Catlett*, 122 Va. 232, 240, 94 S.E. 934 (1917) ("[I]n civil cases, a fact may be established by a preponderance only of the evidence."). In order to prove debts, the Plaintiff offers his own testimony that all partnership debts were paid prior to his dissociation. In addition to his testimony, the Plaintiff points to a cryptic email from the Plaintiff to Defendant stating that he has attached "the venders claim . . . . Give the amounts and I'll send you invoice and Bank info. Or you can wire to the armada, to be distributed." Pl. Ex. 55, Email from Mahmood "Sam" Sahraeyan to B. Shahkarami, September 20, 2010. The Plaintiff replies to the Defendant stating that he wants "to pay them all in full." Pl. Ex. 55, Email from B. Shahkarami to Mahmood "Sam" Sahraeyan, September 20, 2010.

The Plaintiff next points to an email from the Defendant to the Plaintiff, entitled "Bank Balance," which recaps "what transaction has taken place." Pl. Ex. 56, Email from B. Shahkarami to Mahmood "Sam" Sahraeyan, September 22, 2010. The Court finds that this evidence alone fails to demonstrate that the corporation paid all debts. The Plaintiff has not met his burden of proof. Without information regarding the liabilities of the partnership, the Court is unable to appropriately settle the accounts of the partnership.

Regardless, Plaintiff cites two cases, which, he asserts, stand for the proposition that the Court may use inferential evidence to help fill in the gaps regarding these unascertainable amounts. In the first case, the Plaintiff filed an action for compensatory damages against a phone company. *Chesapeake & Potomac Tel. Co. v. Carless*, 127 Va. 5, 102 S.E. 569 (1920). She alleged that her continued loss of service caused her, at least on one occasion, to be exposed to cold weather, which was an inconvenience, annoyance, and caused her physical hardship. *Id.* The court stated that the fact finder was entitled to act upon both inferential and direct proof. *Id.* at 12. The Court stated "[W]hen, from the nature of the case, the amount of the damages cannot be estimated with certainty, or only part of them can be estimated, we can see no objection to placing before the jury all the facts and circumstances of the case, having any tendency to show damages, or their probable amount, so as to enable them to make their most intelligible

and probable estimate." *Id.* at 12 (citing *Allison v. Chandler*, 11 Mich. 542, 555 (1863)).

The Court finds the use of *Chesapeake and Potomac Tel. Co.* unpersuasive. The present matter is not a case that involves an intentional wrong where damages are unclear. In cases such as those, damages, such as pain and suffering, are seldom clear to the Court. In this case, the Court is trying to determine whether the partnership paid all of its liabilities; this question must be answered before it determines the proper measure of damages. Even if this case was not distinguishable from the present matter, the Court finds that there is not enough circumstantial evidence in our present matter to determine the liabilities owed by the partnership at the time of dissociation.

The second case involves the Virginia Supreme Court's determination of damages to the goodwill of a business. *Wood v. Pender-Doxey Grocery Co.*, 151 Va. 706, 709, 144 S.E. 635 (1928). The court asserted that, while damages for breach must be the logical and natural result of the breach, in cases of an intentional harm, the standard of proof is relaxed so that juries may take into account inferential evidence to measure damages. See *id.* at 713. Plaintiff argues that, where the wrongdoer creates a situation that makes the proof of damages difficult, the fact finder is permitted to use circumstantial evidence to determine damages. In this case, if the Defendant is deemed a wrongdoer for his failure to maintain adequate records of the debts of the business at the time of dissolution, the Plaintiff, as partner, should equally be deemed a wrongdoer. As such, both parties contributed to the difficulty of the determination of the debts of the partnership, and, therefore, a relaxed degree of proof is not merited in this instance.

Without a relaxed degree of proof, I cannot say that I am convinced by a preponderance of the evidence that all liabilities had been paid. Testimony by one party and two vague emails do not satisfy the Plaintiff's burden of proof. Without sufficient evidence regarding the liabilities of the partnership, a determination of damages is not possible. The Plaintiff's argument that his damages are merely his 23.33 percent of all the accounts receivable (because all debts had been paid) is attractive; however, this argument is legally insufficient.

## Conclusion

I find that the parties entered into a general partnership. However, I am compelled to conclude that the Plaintiff failed to meet his burden of proof as to damages. Therefore, it is ordered that judgment be entered for the Defendant.